[Cite as *Bloom v. Bloom*, 2020-Ohio-4107.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| TED EUGENE BLOOM, | : | **O P I N I O N** |
| Plaintiff-Appellant/<br>Cross-Appellee, | : | |
| | | **CASE NOS. 2019-T-0078** |
| - vs - | : | **2019-T-0080** |
| GINA MARIE BLOOM, | : | |
| Defendant-Appellee/<br>Cross-Appellant. | : | |

Civil Appeals from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2017 DR 00183.

Judgment: Affirmed.

*Martin F. White*, Martin F. White, Co., L.P.A., 156 Park Avenue, N.E., P.O. Box 1150, Warren, Ohio 44482-1150 (For Plaintiff-Appellant/Cross-Appellee).

*Charles E. Dunlap*, 7330 Market Street, Youngstown, Ohio 44512, and *Christopher A. Maruca* and *Anthony P. Celo*, The Maruca Law Firm, LLC, 201 East Commerce Street, Suite 316, Youngstown, Ohio 44503 (For Defendant-Appellee/Cross Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant/cross-appellee, Ted Eugene Bloom ("Mr. Bloom"), appeals the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, denying his motion for relief from judgment pursuant to Civ.R. 60(A) that alleged the existence of a clerical mistake in the divorce decree involving Mr. Bloom and appellee/cross-appellant, Gina Marie Bloom ("Ms. Bloom").

{¶2} Ms. Bloom appeals the trial court's failure to grant her request for attorney fees for Mr. Bloom's alleged frivolous conduct in filing the motion.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The trial court did not abuse its discretion in denying Mr. Bloom's motion for relief from judgment pursuant to Civ.R. 60(A) because Mr. Bloom did not establish that the trial court made a "clerical mistake" in the divorce decree. Any mistake on the trial court's part would constitute a mistake of fact based on an erroneous evaluation of the trial evidence. Therefore, the alterations that Mr. Bloom requested would require legal decisions and judgments based on the record, not merely the correction of mechanical mistakes.

{¶5} (2) The trial court did not err in failing to grant Ms. Bloom's request for attorney's fees for alleged frivolous conduct because her request was not set forth in a formal, proper motion pursuant to Civ.R. 7(B)(1).

{¶6} Thus, we affirm the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division.

## Substantive and Procedural History

{¶7} The underlying matter involves the parties' contested divorce. The matter proceeded to trial over 20 separate days during September through December of 2018 to address Mr. Bloom's complex financial and business interests.

### *Relevant Trial Evidence*

{¶8} The parties disputed whether some of Mr. Blooms financial assets constituted marital assets. Relevant here are (1) Bloom Land Company, LLC ("Bloom Land"), a limited liability company of which Mr. Bloom was the sole member; and (2) a loan to a company known as Gearmar (the "Gearmar loan").

2

{¶9} Mr. Bloom retained Kelly Carrier, CPA, from Hill, Barth King. Ms. Carrier testified that Bloom Land was formed to hold title to certain real estate used in conjunction with one of Mr. Bloom's business ventures. She opined that the fair market value of Bloom Land as of August 13, 2018 was $802,421. She testified that Bloom Land's net assets included a note receivable from Gearmar in the amount of $500,000.

{¶10} Ms. Bloom's retained Gennaro Ricciardi, CPA, as an expert, and he testified that he had no disagreement with Ms. Carrier's valuation of Bloom Land.

{¶11} Ms. Bloom introduced a personal financial statement that Mr. Bloom prepared for his bank in 2018. A schedule to the financial statement indicated that Gearmar owed $750,000 to Mr. Bloom in his personal capacity.

{¶12} Mr. Bloom also presented the testimony of Paul Fridley, CPA, the chief financial officer of one of Mr. Bloom's business ventures who also handles the financial aspects, management, and operations of Mr. Bloom's affiliated businesses. He testified that Mr. Bloom incorrectly listed the Gearmar loan as $750,000 on the personal financial statement. According to Mr. Fridley, a $500,000 portion of that note was included in the value of Bloom Land, leaving a balance of $250,000.

### Judgment Entry/Decree of Divorce

{¶13} On December 31, 2018, the trial court issued a 94-page "Judgment Entry Final Decree of Divorce" containing detailed findings of fact and conclusions of law.

{¶14} Within finding of fact no. 10(b), the trial court analyzed the evidence regarding Bloom Land, including the testimony of Ms. Carrier and Mr. Ricciardi. The trial court noted Ms. Carrier's testimony that Bloom Land's assets included "notes receivable," but the trial court did not identify them. Within this finding of fact and in conclusion of law

no. 15, the trial court determined that the value of Bloom Land was $802,421 and that it was a marital asset.

{¶15} In finding of fact no. 25, the trial court addressed the Gearmar loan. The trial court noted testimony regarding the owners of the Gearmar business entity and monthly payments to Mr. Bloom. It did not reference Bloom Land or Mr. Fridley's testimony regarding alleged double counting. In this finding of fact and in conclusion of law no. 30, the trial court determined that Gearmar owed "Plaintiff (Incredible Solutions)" the sum of $750,000 and that it was a marital asset. Incredible Solutions, Inc. is a business entity owned by Mr. Bloom that resulted from the merger of three of his business entities.

{¶16} In conclusion of law no. 33, the trial court awarded Mr. Bloom certain marital assets and liabilities, including Bloom Land, the value of which the trial court listed as $802,421, and the Gearmar loan, the value of which the trial court listed as $750,000.

{¶17} Neither party appealed the trial court's judgment entry.

### Motion for Relief from Judgment

{¶18} On May 29, 2019, Mr. Bloom filed a motion for relief from judgment pursuant to Civ.R. 60(A). According to Mr. Bloom, the trial court made a "mathematical miscalculation" when it totaled the amount of the marital assets. Specifically, he argued that the trial court inadvertently counted the $500,000 Gearmar loan twice, resulting in a $250,000 windfall to Ms. Bloom at Mr. Bloom's expense.

{¶19} Mr. Bloom also submitted affidavits from himself and Ms. Carrier.

{¶20} Mr. Bloom averred that he made two loans to Gearmar totaling $750,000: (1) a loan in the amount of $500,000 recorded for accounting purposes as an asset of Bloom Land; and (2) a loan in the amount of $250,000 treated as a loan from himself

4

personally. Attached to his affidavit were purported copies of the two loan agreements with Gearmar, the financial statement that Ms. Bloom introduced at trial, Ms. Carrier's written valuation analysis of Bloom Land, and an excerpt from the transcript of Ms. Carrier's trial testimony.

{¶21} Ms. Carrier averred that the trial court's valuation of the Gearmar loan could only be explained as a double count of the first loan. Attached to her affidavit were a purported copy of her written valuation analysis of Bloom Land and an excerpt from the transcript of her trial testimony.

{¶22} Ms. Bloom filed a response in opposition, arguing that the trial court's judgment entry indicates it chose to believe the documentary evidence over Mr. Fridley's testimony regarding alleged double counting. Thus, Ms. Bloom asserted that any trial court error was substantive rather than clerical.

{¶23} Mr. Bloom's motion was heard by the successor to the original trial judge who issued the divorce decree. The hearing consisted of the testimony and cross-examination of Mr. Bloom, Ms. Carrier, and Mr. Fridley, the introduction of exhibits, and argument from counsel.

{¶24} Following the hearing, Ms. Bloom filed a closing brief. In the last sentence, Ms. Bloom asserted that Mr. Bloom's motion was "entirely frivolous" and requested that the trial court grant her reasonable attorney's fees.

### The Appealed Judgment Entry

{¶25} The trial court issued a journal entry denying Mr. Bloom's motion. The trial court determined that any error is beyond the scope of Civ.R. 60(A) because it would be substantive and of a factual nature, and it would require a redetermination of the credibility

5

of witnesses and factual determinations rather than the correction of a mechanical and/or scrivener's error.

{¶26} Mr. Bloom appealed and presents the following assignment of error for our review:

{¶27} "The trial court abused its discretion in determining that an obvious double count of a marital asset was not amenable to correction through Civ. R. 60(A)."

{¶28} Ms. Bloom also appealed, which we sua sponte consolidated with Mr. Bloom's appeal. Within her response to Mr. Bloom's assignment of error, Ms. Bloom states as follows:

{¶29} "The trial court abused its discretion by not granting attorney's fees in response to the frivolous Civ.R. 60(A) motion."

**Clerical Mistake**

{¶30} In his sole assignment of error, Mr. Bloom contends that the trial court erred by denying his motion for relief from judgment pursuant to Civ.R. 60(A).

*Standard of Review*

{¶31} We review a trial court's denial of a motion for relief from judgment pursuant to Civ.R. 60(A) for an abuse of discretion. *See State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996).

{¶32} An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶33} When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error (although harmless errors and errors not preserved for appellate review are not reversible). *Id.* at

6

¶67, fn. 2. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶67.

### *Civ.R. 60(A)*

{¶34} Civ.R. 60(A) provides for the correction of clerical mistakes after final judgment has been entered. *Palac v. Smith*, 11th Dist. Trumbull No. 2005-T-0074, 2006-Ohio-5366, ¶21. It states, in relevant part, that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders."

{¶35} As construed by the Supreme Court of Ohio, "Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments." *Litty* at 100, citing *Londrico v. Delores C. Knowlton, Inc.*, 88 Ohio App.3d 282, 285 (9th Dist.1993); *see Kuehn v. Kuehn*, 55 Ohio App.3d 245, 247 (12th Dist.1988), citing *Musca v. Chagrin Falls*, 3 Ohio App.3d 192 (8th Dist.1981), paragraph one of the syllabus ("Substantive changes in judgments, orders, or decrees are not within [the rule's] purview"). The term "clerical mistake" refers to "a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." *Litty* at 100, citing *Londrico* at 285.

{¶36} This court has stated that "[t]he basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of 'blunders in execution' whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual

7

mistake in making its original determination, or because on second thought, it has decided to exercise its discretion in a different manner." *Faith v. Scuba*, 11th Dist. Geauga No. 2007-G-2767, 2007-Ohio-6563, ¶32, quoting *Kuehn* at 247, citing *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir.1987) (interpreting Fed.R.Civ.P. 60(a)).

{¶37} Courts have held that the proper use of Civ.R. 60(A) is to make changes in judgments to reflect what, in fact, the trial court really decided. *Binder v. Binder*, 8th Dist. Cuyahoga No. 88468, 2007-Ohio-4038, ¶8. In effect, the relief afforded by Civ.R. 60(A) is the judgment actually rendered by the court. (Citations omitted.) *Id.*; *see also Chrisman v. Chrisman*, 12th Dist. Warren No. CA97-10-109, 1999 WL 59662, *5 (Feb. 8, 1999) (requested changes under Civ.R. 60(A) may only be granted if they reflect the court's "actual intention").

{¶38} Federal courts applying the identical language in Fed.R.Civ.P. 60(a) have held that a trial court may invoke the rule "to make a judgment reflect the actual intentions of the court, plus the necessary implications." *Blanton* at 1577.

{¶39} Courts have also held that a modification cannot be characterized as an improper substantive modification by virtue of its effects. *See Foster v. Foster*, 4th Dist. Washington No. 96CA1767, 1997 WL 583567, *6 (Sept. 23, 1997). Rather, "[i]t is the nature of the correction, rather than the effect of the correction which must be examined." *Id.*; *accord Wood v. Wood*, 11th Dist. Portage No. 2009-P-0076, 2010-Ohio-2155, ¶24 (affirming a trial court's substantial alteration of its judgment entry where it did not alter the court's intent).

{¶40} Further, this court has recognized that Civ.R. 60(A) cannot be used as a substitute for an appeal of a judgment. *Palac* at ¶29, citing *Kramer v. Union Eye Care Ctr., Inc.*, 9th Dist. Lorain No. 98CA007209, 1999 WL 1215164, *2 (Dec. 15, 1999).

8

### *Cases finding Civ.R. 60(A) to be applicable*

{¶41} Mr. Bloom cites decisions where this court and others have found Civ.R. 60(A) to be applicable in the context of divorce proceedings.

{¶42} For instance, in *Angelo v. Angelo,* 11th Dist. Trumbull No. 2012-T-0094, 2013-Ohio-5265, the trial court issued a divorce decree ordering that one half of Mr. Angelo's vested interest in a pension asset "accrued from May 21, 1988 to November 9, 2002" be transferred to Ms. Angelo by a qualified domestic relations order (QDRO). *Id.* at ¶1-2. The original QDRO did so. *Id.* at ¶3. The trial court subsequently issued an amended QDRO that omitted the words "accrued from May 21, 1988" and instead stated "as of November 9, 2002." *Id.* at ¶5.

{¶43} Mr. Angelo filed a motion for relief from judgment pursuant to Civ.R. 60(A), which the trial court granted. *Id.* at ¶8-9. This court affirmed, finding that the trial court's omission involved "precisely the sort of omission, 'mechanical in nature and apparent on the record which does not involve a legal decision or judgment,' that Civil Rule 60(A) authorizes a court to correct." *Id.* at ¶16.

{¶44} In *Gould v. Gould,* 12th Dist. Butler No. CA2004-01-010, 2005-Ohio-416, the trial court issued a divorce decree indicating that the parties had divided a checking account totaling $23,192.18 to their mutual satisfaction, with one spouse receiving $12,393.46 and the other spouse receiving $10,799.72. *Id.* at ¶31. The trial court found that the property was considered the separate property of each party. *Id.* However, in calculating the value of the marital estate, the trial court included the $23,192.18 checking account as a marital asset. *Id.*

{¶45} Ms. Gould filed a motion for relief from judgment pursuant to Civ.R. 60(A), which the trial court denied. *Id.* at ¶2. The Twelfth District reversed, finding that its "review

9

of the trial court's calculations reveals an inconsistency with the trial court's decree of divorce." *Id.* at ¶30. The court concluded that the trial court committed a clerical mistake in adding $23,192.18 to the marital estate. *Id.* at ¶32.

{¶46} In *Shaver v. Shaver*, 4th Dist. Galia No. 05CA5, 2005-Ohio-6642, trial counsel recited the terms of the parties' agreed division of marital property on the record. *Id.* at ¶2. The trial court subsequently issued a decree of divorce setting forth the division of marital property and debts and explicitly incorporated the transcript of the final divorce hearing as if fully rewritten in the decree. *Id.* As part of the property division, Mr. Shaver was to keep the marital residence, and Ms. Shaver was ordered to convey her interest by deed. *Id.* at ¶3. The decree also ordered Mr. Shaver to pay a cash settlement to Ms. Shaver of $11,000 for her share of his retirement/pension plan and $53,504.79 for her share of the marital residence. *Id.* at ¶4.

{¶47} Mr. Shaver paid the $53,604.79 sum but demanded an additional $11,000 before conveying her interest in the real property. *Id.* at ¶6. Mr. Shaver filed a motion pursuant to Civ.R. 37 to compel Ms. Shaver to execute the deed. *Id.* at ¶5. He argued that the provision in the decree requiring the $11,000 payment was a clerical error that the court should correct pursuant to Civ.R. 60(A). *Id.* at ¶7.

{¶48} After a hearing and briefing, the trial court found that the judgment entry "did not accurately reflect the agreement of the parties in that a number of the marital assets and liabilities set forth on the record were omitted from the Judgment Entry Decree of Divorce." *Id.* at ¶9. The trial court found that the $53,504.79 Mr. Shaver paid to Ms. Shaver plus the in-kind property received by her satisfied Mr. Shaver's obligation. *Id.*

{¶49} The Fourth District affirmed, finding that the "record clearly demonstrates that the trial court made an inadvertent mathematical error in the divorce decree when it

10

calculated the cash settlement that Mr. Shaver was to pay to Ms. Shaver." *Id.* at ¶14. After reviewing the terms of the parties' agreement that counsel had recited on the record, the court concluded that "it is clear from the record that the $53,504.79 cash payment made to Ms. Shaver included the $11,000 she was entitled to receive for her share of Mr. Shaver's pension." *Id.* at ¶20.

{¶50} Finally, Mr. Bloom cites *Bittner v. Bittner*, 5th Dist. Delaware No. 16 CAF 10 0043, 2017-Ohio-7498. In that case, the parties' agreed judgment entry/decree of divorce provided awarded Mr. Bittner all of his 401(K) plan, while Ms. Bittner was to share equally in his profit-sharing plan. *Id.* at ¶4-5. Subsequently, Fidelity Investments administratively merged the plans. *Id.* at ¶61. Ms. Bittner filed a motion for contempt for financial obligations under the decree and sought funds from Mr. Bittner's investment accounts. *Id.* at ¶7. The trial court ultimately issued an amended QDRO to assign Ms. Bittner a portion of the total account balance for the "employee retirement plan." *Id.* at ¶10. Based on the name of the plan utilized in the amended QDRO, Fidelity Investments also split the 401(K) plan between the parties. *Id.* at ¶60.

{¶51} Mr. Bittner filed a motion pursuant to Civ.R. 60(A) relating to the above issue and others, which the trial denied. *Id.* at ¶16, 32. The Fifth District reversed a portion of the trial court's denial, finding that the split was in contravention of the divorce decree. *Id.* at ¶63. According to the court, "a corrected judgment entry would not create new rights, but would merely grant Husband the rights originally agreed to and intended in the divorce decree." *Id.*

{¶52} Mr. Bloom asserts that the above cases and the underlying case involved "mathematical miscalculations" that were "inconsistent with the obvious intent of the

11

judgment," "were apparent on the record," and "did not involve matters of judicial discretion."

### Cases finding Civ.R. 60(A) to be inapplicable

{¶53} Ms. Bloom distinguishes the above cases and cites decisions where courts have found Civ.R. 60(A) to be inapplicable.

{¶54} For instance, in *Bittner*, the Fifth District affirmed a portion of the trial court's denial of Mr. Bittner's Civ.R. 60(A) motion. Mr. Bittner had also argued that a value listed in the amended QDRO related to later date than to which the parties had agreed in the divorce decree. *Id.* at ¶57. The court found that the trial court did not abuse its discretion in finding the testimony regarding the error to be "unclear" and that the alleged error was more than a clerical error or blunder in execution. *Id.* at ¶59. According to the court, Mr. Bittner's request "goes beyond the scope of merely correcting a clerical error and instead requires a legal judgment and decision that would have to be brought to the attention of the trial court through a Civil Rule 60(B) motion." *Id.*

{¶55} In *Merkle v. Merkle*, 5th Dist. Licking No. 13-CA-31, 2014-Ohio-81, the trial court issued a divorce decree, which neither party appealed. *Id.* at ¶3. Ms. Merkle subsequently filed a "motion for reconsideration," requesting the correction of issues relating to retirement and personal property pursuant to Civ.R. 60(A), which the trial court denied. *Id.* at ¶3-4.

{¶56} The Fifth District affirmed, finding that Ms. Merkle's requests went beyond the scope of merely correcting a clerical error or blunder in execution and required "legal decisions and judgments" which would "constitute a substantive change to the court's judgment." *Id.* at ¶13. According to the court "[i]f a mistake was made in the divorce decree as appellant asserts, it was not a clerical mistake[,] and we would have to review

12

the trial court's decision in conjunction with the evidence presented to the trial court. Civil Rule 60(A) cannot be utilized to correct such a mistake and cannot be applied to change something which was deliberately done." *Id.*, citing *Melkerson v. Melkerson*, 11th Dist. Geauga No. 2009-G-2887, 2009-Ohio-6381.

{¶57} The court also concluded that Ms. Merkle was actually attempting to utilize Civ.R. 60(A) as a substitute for appeal:

{¶58} "The issues raised by appellant in her motion for reconsideration were cognizable on direct appeal from the * * * divorce decree and are a challenge to the correctness of the trial court's decision on the merits. Such a challenge could have been raised by way of appeal of the divorce decree[,] and Rule 60(A) relief is not available as a substitute for such appeals." *Id.* at ¶14.

{¶59} Finally, in *Countrywide Home Loans, Inc. v. Hannaford*, 9th Dist. Summit No. 22000, 2004-Ohio-4317, a second mortgage holder who had not been notified of a foreclosure suit (MERS-SF), filed a motion to intervene and made a claim on excess funds, which the trial court denied. *Id.* at ¶5-8. MERS-SF did not appeal the denial but instead filed a "motion for reconsideration, or in the alternative, motion for relief from judgment," based, in part, on Civ.R. 60(A), which the trial court also denied. *Id.* at ¶9-10.

{¶60} On appeal of the latter judgment, MERS-SF argued that the trial court's decision was based on the "inadvertent misunderstanding that it was a plaintiff to, and thus notified of, the original suit." *Id.* at ¶17. The Ninth District found that Civ.R. 60(A) "is used to fix clerical errors alone, and not to alter substantive issues" and that "'an

13

inadvertent misunderstanding' by the trial court, as alleged by MERS-SF, simply does not fall under this type of clerical rule." *Id.* at ¶18.[1]

{¶61} Ms. Bloom argues that under the above case law, Civ.R. 60(A) may only be applied in mechanical calculations to correct obvious mistakes in math but not to add information, words, or numbers, or to substitute the court's initial judgment regarding the figures to use in its calculations.

### *Analysis*

{¶62} In light of the above authorities, we find that the trial court did not abuse its discretion in denying Mr. Bloom's motion for relief from judgment pursuant to Civ.R. 60(A) because Mr. Bloom did not establish that the trial court made a "clerical mistake" in the divorce decree.

{¶63} The cases Mr. Bloom cites are all distinguishable because they involved situations in which a trial court's judgment was contrary to its intent as reflected in the record.

{¶64} For instance, *Angelo* and *Bittner* both involved subsequent QDRO's that conflicted with a prior divorce decree. *See Angelo* at ¶16; *Bittner* at ¶63. *Shaver* involved a subsequent divorce decree that conflicted with the terms of the parties' agreement that counsel had recited on the record, the transcript of which the trial court explicitly incorporated into the decree. *See id.* at ¶2, 20. And *Gould* involved a divorce decree in

---

1. Ms. Bloom also cites *Westhoven v. Westhoven*, 6th Dist. Ottawa No. OT-10-037, 2011-Ohio-3610, for the proposition that "the choice of asset numbers used by the court was a judgment question and not a mathematical computation question." However, *Westhoven* does not expressly state this holding. The Sixth District found no clerical mistakes but ultimately held that Mr. Westhoven's argument was barred by the doctrine of res judicata, as it had previously affirmed the trial court's judgment, and no claims of mathematical errors in the calculation of values or the distribution of assets had been raised. *See id.* at ¶8-9, 14-15.

14

which the trial court's calculation of the value of the marital estate conflicted with its determination and calculation of marital assets. *See id.* at ¶30-31.

{¶65} In the underlying case, the trial court heard conflicting evidence at trial regarding the Gearmar loans. While trial court appears to have adopted Ms. Carrier's opinion of value for Bloom Land, it did not identify the "notes receivable" that comprised Bloom Land's net assets.

{¶66} Further, the trial court determined that Gearmar owed "Incredible Solutions" the sum of $750,000, not Bloom Land or Mr. Bloom personally. The trial court did not cite the evidence upon which this determination was based, nor did it reference Bloom Land or Mr. Fridley's testimony regarding alleged double-counting.

{¶67} Thus, unlike in *Angelo* and *Bittner*, the trial court's judgment entry does not conflict with its intent as expressed elsewhere. Unlike in *Shaver*, the trial court issued findings of fact after evaluating voluminous and sometimes conflicting evidence; it was not intending to transcribe an agreement between the parties. And unlike in *Gould*, the trial court's determination and valuation of marital assets is consistent with its calculation of the marital estate. *See also Newton v. Newton,* 2d Dist. Greene No. 07-CA-018, 2008-Ohio-1757, ¶5 (finding no "clerical mistake" where "the court referred to nothing on the record that demonstrated the court had made an inadvertent error in dividing the parties' retirement pensions"); *Londrico*, *supra*, at 286, (finding that "only a blunder in execution" explained the trial court's inclusion of the phrase "case is dismissed" in a judgment entry in light of other language).

{¶68} Instead, as in *Merkle*, Mr. Bloom is attempting to utilize Civ.R. 60(A) to change something which appears to have been deliberately done. *See id.* at ¶13. This

court and others have consistently held that Civ.R. 60(A) may not be applied in this manner.

{¶69} For example, in *Melkerson, supra*, this court held a trial court could not alter a "prudential error" in effectuating the division of a 401(k) in an agreed judgment entry of divorce. *Id.* at ¶41.

{¶70} In *Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116 (8th Dist.1985), the Eighth District held that Civ.R. 60(A) applies to "inadvertent clerical errors only." *Id.* at 118.

{¶71} In *Newton*, the Second District held that a trial court could not materially alter its intentional division of the parties' retirement accounts through Civ.R. 60(A), even though the judgment did not reflect the parties' agreement. *Id.* at ¶5

{¶72} In *Paris v. Georgetown Homes, Inc.*, 113 Ohio App.3d 501 (9th Dist.1996), the Ninth District held that Civ.R. 60(A) could not be utilized where the record indicated that the trial court's exclusion of words in a judgment entry were intentional rather than inadvertent. *Id.* at 503-04.

{¶73} And in *Chrisman, supra,* the Twelfth District held that Civ.R. 60(A) could not be utilized to change something that the trial court did deliberately, even if it were based on an erroneous assumption. *Id.* at *5. Instead, such a determination must be left to the trial court in the first instance. *Id.*

{¶74} In the event the trial court made a mistake in the divorce decree, it would constitute a mistake of fact based on the trial court's erroneous evaluation of the trial evidence. Therefore, as in *Merkle*, the alterations that Mr. Bloom requested would require legal decisions and judgments based on the record, not merely the correction of mechanical mistakes. *See id.* at ¶13.

16

{¶75} Courts have consistently held that such mistakes are beyond the scope of Civ.R. 60(A).

{¶76} For example, in *Hamlin v. Hamlin*, 2d Dist. Darke No. 1312, 1993 WL 32010 (Feb. 12, 1993), the Second District held that a trial court's factual finding in a final judgment of divorce regarding the value of a savings-stock purchase program would constitute a mistake of fact rather than a mere clerical blunder. *Id.* at *2.

{¶77} In *Chrisman*, the Twelfth District held that the amount a trial court determined a party must pay to accomplish an equalization of a property division was not a clerical error but a mistake of fact based on an "erroneous assumption." *Id.* at *5.

{¶78} In *Thurston v. Thurston*, 10th Dist. Franklin No. 02AP-555, 2002-Ohio-6746, the Tenth District held that a magistrate's factual determination regarding the date spousal support arrearages were owed was beyond the scope of Civ.R. 60(A). *Id.* at ¶14.

{¶79} In *Countrywide Home Loans, Inc.*, the Ninth District held that a judgment resulting from a trial court's "inadvertent misunderstanding" of the facts was beyond the scope of Civ.R. 60(A). *Id.* at ¶18.

{¶80} In *Hiles v. Veach*, 4th Dist. Pike No. 97CA604, 1998 WL 823802 (Nov. 20, 1998), the Fourth District held that regarding the amount of child support arrearage was a factual mistake beyond the scope of Civ.R. 60(A). *Id.* at *3.

{¶81} And in *Prarat v. Am. Analytical Laboratories, Inc.*, 9th Dist. Summit No. 15715, 1993 WL 21012 (Jan. 27, 1993), the Ninth District held that changing a factual finding regarding the number of projects on which an employee worked would be substantive rather than clerical. *Id.* at *4.

17

{¶82} The appropriate procedure was for Mr. Bloom to file a timely appeal of the trial court's judgment entry/divorce decree rather than a motion for relief from judgment under Civ.R. 60(A). *See Merkle* at ¶14.

{¶83} The trial court's analysis in its journal entry denying Mr. Bloom's Civ.R. 60(A) motion is in accord with the proceeding discussion. Therefore, we conclude that the trial court did not abuse its discretion in denying Mr. Bloom's motion for relief from judgment pursuant to Civ.R. 60(A).

{¶84} Mr. Bloom's sole assignment of error is without merit.

### Attorney's Fees

{¶85} As indicated, Ms. Bloom also appealed the trial court's journal entry denying Mr. Bloom's motion for relief from judgment, which we sua sponte consolidated with Mr. Bloom's appeal.

{¶86} We note that Ms. Bloom has failed to set forth her assignment of error in compliance with App.R. 16(A)(3) and Loc.R. 16(C)(1) and (4). Instead, in a "response" to Mr. Bloom's assignment of error, Ms. Bloom asserts that "[t]he trial court abused its discretion by not granting attorney's fees in response to the frivolous Civ.R. 60(A) motion." However, because Mr. Bloom was afforded the opportunity to respond to this assertion, we will address it in the interest of justice. *See Germadnik v. Auld*, 11th Dist. Trumbull No. 2017-T-0113, 2018-Ohio-2889, ¶11.

{¶87} R.C. 2323.51(B)(1) provides that "any party adversely affected by frivolous conduct may file a *motion* for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action * * *." (Emphasis added.) R.C. 2323.51(B)(2) provides that "[a]n award may be made pursuant to division (B)(1) of this section upon the *motion* of a party to a civil action * * *." (Emphasis added.)

18

{¶88} Pursuant to Civ.R. 7(B)(1), "[a] motion, whether written or oral, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Thus, a party is required to file a motion when seeking a court order so that the trial court's attention is drawn to the issue. *Dale v. Dale*, 10th Dist. Franklin No. 02AP-644, 2003-Ohio-1113, ¶10. Further, by requiring a movant to file a motion stating the grounds for relief with particularity, Civ.R. 7(B)(1) ensures that the non-moving party can formulate an appropriate response. *Id.*

{¶89} The record indicates that following the hearing on Mr. Bloom's 60(A) motion, Ms. Bloom filed a closing brief, the last sentence of which states as follows:

{¶90} "Further, as Plaintiff has brought an entirely frivolous Motion, well beyond the scope of Civ.R. 60(A), this Honorable Court should grant Defendant reasonable attorney's fees for her defense of this motion, including the briefs and hearing."

{¶91} Mr. Bloom filed a response to Ms. Bloom's closing brief but did not acknowledge or address her request for attorney's fees. In its journal entry denying Mr. Bloom's 60(A) motion, the trial court also did not acknowledge or address Ms. Bloom's request.

{¶92} Without a formal, proper motion pursuant to Civ.R. 7(B)(1), the issue of attorney's fees was not before the trial court, and the trial court could not rule upon it. *See Dale* at ¶11; *Young v. Russ*, 11th Dist. Lake No. 2003-L-206, 2005-Ohio-3397, ¶69 (reversing an award of attorney's fees where the party's request was contained in a footnote in its memorandum in support of a motion for summary judgment). Consequently, we conclude that the trial court did not err by failing to grant Ms. Bloom's request for attorney's fees.

{¶93} Ms. Bloom's sole assignment of error is without merit.

19

{¶94} Based on the foregoing, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.


TIMOTHY P. CANNON, P.J.,

MATT LYNCH, J.,

concur.